In re SIMMONS et al.

(District Court, D. Massachusetts. July 30, 1918.)

No. 24658.

1. BANKRUPTCY ⬥143(12)—PROPERTY VESTING IN TRUSTEE—LIFE INSURANCE POLICY.

   A trustee is entitled to the surrender value of an endowment insurance policy on the life of bankrupt, where it has a cash surrender value, either by its terms or by the concession and practice of the company.

2. INSURANCE ⬥239—LIFE INSURANCE—RIGHTS OF BENEFICIARY.

   Under St. Mass. 1907, c. 576, § 73, providing that a life policy payable to a married woman shall inure to her separate use and that of her children, free from debts of the insured, her rights in a policy having a cash surrender value are subject to the right of the insured to surrender it.

In Bankruptcy. In the matter of Arthur E. Simmons and John J. Griffin, partners, bankrupts. On petition to review order of referee directing Arthur E. Simmons, one of the bankrupts, to turn over to the trustee a certain life insurance policy. Order affirmed.

Milton B. Warner and Warner & Barker, all of Pittsfield, Mass., for bankrupts.

Walter J. Donovan, of Adams, Mass., for trustee.

JOHNSON, Circuit Judge. Arthur E. Simmons, one of the bankrupts, at the time of the adjudication of bankruptcy, held an endowment policy for $1,000, issued by the Metropolitan Life Insurance Company on the 4th day of September, 1903, which provides that

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the insurance company will pay to him at the expiration of 20 years the sum of $1,000, and in case he should die prior to the expiration of 20 years, while said policy is in force, the said company shall pay the above-mentioned sum to Martha A. Simmons, mother of the insured, if alive; otherwise, to the legal representatives of the insured.

[1] While there is no provision in the policy for a change of beneficiary, it appears by assignment dated November 16, 1912, which is attached to the policy, that Martha A. Simmons assigned all her interest in the said policy to the insured, and that upon the request of the insured, Minnie M. Simmons, his wife, was designated as contingent beneficiary in said policy, to whom the proceeds of the same were to be paid in the event of the death of the insured prior to the expiration of the endowment period, if living; otherwise, to his legal representatives. The insurance company, it would seem, assented to this change of beneficiary and recorded the assignment and change of beneficiary in its policy register.

The referee has found that this policy had a cash surrender value on February 19, 1917, the date of the adjudication, of $415.26, according to the computation of the insurance company, and has ordered the bankrupt, Arthur E. Simmons, to pay or cause to be paid to his trustee the amount of the cash surrender value of said policy at the date of adjudication in bankruptcy, or that he execute an assignment of such documents and papers as may be necessary to enable the trustee to collect from the insurance company the amount of the cash surrender value of said policy, and the District Court is asked to review his order.

Section 70a, cl. 5 (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1916, § 9654]), contains the following provision:

"Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors, participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

While the policy does not contain any provision for a cash surrender value, other than a table of the different amounts which the insurance company would loan at the expiration of different times during the life of the policy, the referee has found that the policy did have at the adjudication a cash surrender value, and it is evident from his report that this was recognized by the insurance company, as the amount was computed by it.

It was held in Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, that the provision of the Bankruptcy Act relating to insurance policies is not confined to policies in which the cash surrender value is expressly stated, but applies also to policies which have a cash surrender value by the concession or practice of the company issuing the same.

Previous to this decision of the Supreme Court, it had been held in this circuit (In re Boardman [D. C.] 103 Fed. 783), by Low-

ell, District Judge, that it was immaterial whether the cash surrender value was stated in the policy or not; "if in the ordinary course of business the bankrupt can obtain cash from the company by a surrender of the policy, his creditors are entitled to the cash."

While the referee does not state that the insurance company admitted that the policy at the time of adjudication had a cash surrender value, he does find and report that this cash surrender value was computed by the company, and I think his finding and report should be accepted by the court.

[2] But it is contended that, even if the policy had a cash surrender value, it was exempt under chapter 576, § 73, of the Acts and Resolves of Massachusetts of 1907, which is as follows:

"Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, * * * shall inure to her separate use and benefit, and for that of her children."

And it further provides that the "beneficiary * * * shall be entitled to its proceeds against the creditors and representatives of the person effecting the" insurance.

This statute has received a construction by the Supreme Court of Massachusetts in Bailey v. Wood, 202 Mass. 549, 89 N. E. 147, 25 L. R. A. (N. S.) 722, and it was there held that it applies to and includes an assignment by a husband to his wife of a paid-up endowment life insurance policy, even when such assignment was made when the assignor was deeply insolvent within the knowledge both of himself and his wife. It will be noted, however, that the policy assigned to the wife was a paid-up endowment life insurance policy, and the court held that the insured's life "constitutes no part of the assets of his estate, and nothing therefore is taken from his creditors by an insurance upon it in favor of his wife or the assignment to her of a policy of insurance already issued."

In Dame v. Blinn, 207 Mass. 159, 93 N. E. 601, it was held that:

"A general assignment for the benefit of creditors which conveys all property of the assignor legal and equitable except such as is exempt by statute from being taken on execution, and expressly includes 'all claims, debts, choses in action, owing to him, whether now or hereafter payable,' transfers to the assignee a right of the assignor to surrender a policy of life insurance and take the amount of the surrender value for his own benefit."

The policy in this case was an endowment policy payable to the insured at the expiration of the period stated in the policy, or if the insured should die before that time to children of the insured, if living, otherwise to the insured's executors, administrators, or assigns, with power to the insured to surrender the policy to the company at any time. The policy was therefore assignable by the insured, and it contained a statement of what the accepted surrender value or the amount to be paid by the company to the insured or his assignees on surrender of the policy would be at the end of the successive years of the proposed insurance. The court there held that the children's rights under the policy were made subject to the unrestricted right of the insured to surrender it; that "this was a valuable property

right, incident to his general right under the policy, such as would pass with an assignment of the latter."

While the policy in the case under consideration contains no power of surrender clause, nor any clause authorizing assignment of the policy, yet it is true that the insurance company had already recognized one assignment of the policy before adjudication, and in view of the fact that the referee has found that the policy did have a cash surrender value at that time, it is evident that the referee must have found that it was the practice of the insurance company to accord the right of surrender to the insured under such a policy.

In Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, the policies under consideration had a surrender value; but the bankrupt before adjudication had procured loans upon the policies to the extent of their full surrender value. The court there held that there was nothing of value under the policies to be assigned to the trustee, and "that in the present case the company had advanced upon the policies their full surrender value as stipulated in the policies, and that the only interest that could have passed to the trustees would have been the speculative right to the net proceeds of the policies, contingent upon the death of the bankrupt, and possibly dependent upon the payment of large annual premiums for 13 years." The court in its opinion states:

"Congress recognized also that many policies at the time of bankruptcy might have a very considerable present value which a bankrupt could realize by surrendering his policy to the company. We think it was this latter sum that the act intended to secure to creditors by requiring its payment to the trustee as a condition of keeping the policy alive."

The court there held that there was nothing of value under these policies to be assigned to the trustees, but expressly recognizes the right of the trustees to hold as part of the property of the bankrupt, or to have paid to him, as part of the property of the bankrupt, the cash surrender value of any insurance policy.

I agree with the referee that the policy in question had a surrender value which the company was willing to pay, and which makes its value available to the bankrupt estate at the date of adjudication.

The order of the referee is affirmed, and the petition for review is dismissed.