## In re HORWITZ.

### No. 17918.

District Court, W. D. New York.

March 22, 1933.

Benjamin David Reisman, of Buffalo, N. Y., for petitioner.

Israel Rumizen, of Buffalo, N. Y., for trustee.

KNIGHT, District Judge.

At the time of adjudication, bankrupt carried five several policies of endowment insurance on his life. Possession of such policies having been taken by the trustee in bankruptcy, the bankrupt applied for an order declaring exempt from the claim of creditors the proceeds of the cash surrender value of such policies, and directing the trustee to surrender the policies to the bankrupt. The referee granted the order, and, for the review of this, an application is now made.

Three of the policies insured the life of bankrupt in the sum of $10,000. Each of these provided for the payment of that sum to Blume Horwitz, wife of insured, on proof of insured's death prior to the maturity of the endowment, and for the payment of such sum to insured on his surviving such maturity period.

Two policies insured the life of bankrupt in the sum of $10,000 and $5,000, respectively. Each of these provided for payment of the sum therein stated to said wife, on proof of death of insured prior to the maturity of the policy, and payment to insured of a definite amount in monthly payments, beginning

with the date of maturity, if he were then living.

Each policy has a cash surrender value, and in each the right to change the beneficiary is reserved.

Section 70a of the Bankruptcy Act (11 U SCA § 110(a) provides that the trustee shall be vested "by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

Section 6 of the Bankruptcy Act (11 US CA § 24) provides that section 70a, supra, shall not "affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition." Section 55-a of the Insurance Law of New York state (Consol. Laws, c. 28), effective March 31, 1927, in part reads: "If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person."

Section 70a, supra, also provides that, when a bankrupt has a policy of insurance having a cash surrender value "payable to himself, his estate, or personal representatives," he may pay the cash surrender value and retain the policy. It has been definitely held by the Supreme Court that this sentence is not a limitation on section 6, supra, and applies only to policies which are not exempt by other provisions of law. Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018.

■ In determining the meaning and effect of section 55-a, supra, this court will be guided by the construction placed on it by the court of last resort in New York state. Holden v. Stratton, supra; Ehrhart v. New York Life Insurance Co. (D. C.) 45 F.(2d) 804; In re Erstine (D. C.) 41 F.(2d) 559; Smith v. Metropolitan Life Insurance Co. (C. C. A.) 43 F.(2d) 74.

In default of any decision by such court of last resort, the federal court will place its own construction. Arbogast v. Gottfried (C. C. A.) 58 F.(2d) 156; In re David (D. C.) 54 F.(2d) 140; Garber v. Bankers' Mortgage Co. (D. C.) 27 F.(2d) 609; Vought v. Kanne (C. C. A.) 10 F.(2d) 747; Ralph v. Cox (C. C. A.) 1 F.(2d) 435; In re Erstine, supra.

■ Section 55-a relates wholly to "a policy of insurance." Such "policy of insurance" means a life insurance policy. The title to the statute enacting 55-a reads: "An Act to amend the insurance law, in relation to the rights of creditors and beneficiaries under policies of life insurance." Chapter 468, Laws of 1927, New York state. There are different kinds of life insurance, named in accord with the terms and conditions. Among such are what are called "general insurance," or "old line insurance," "assessment," "endowment," "annuity," "group," "tontine," and others.

■ Life insurance is a contract for the payment of a definite sum upon the happening of a particular event and dependent upon the duration of a period of human life. In its earliest use, policies were ordinarily payable to named beneficiaries at the death of the insured. Time developed the plan of insurance agreements for the benefit of the insured or both insured and beneficiaries. All the policies here questioned come in the last-named group. Endowment policies have been in use since 1805. Forms of insurance other than general insurance have been known for many years. Corpus Juris, 37, p. 360, §§ 1–5. The Insurance Law of New York state as enacted in 1849, and as amended from time to time, in no way declares or shows the intent that "endowment" insurance is not included in the term "life" insurance. The act of 1849, chapter 308, relates only to fire insurance, health and life insurance, and this classification has been continued to this date. Various sections of the Insurance Law of New York state refer to "endowment" policies, but the connection in which the term is used indicates no intent to classify an endowment policy as other than a life insurance policy (sections 3, 9, 88, 101, 101½). Baron v. Brummer, 100 N. Y. 372, 3 N. E. 474; Miller v. Campbell, 140 N. Y. 457, 35 N. E. 651; Vance on Insurance (2d Ed.) p. 1, 1930, p. 547;

Holden v. Stratton, supra; Cooley on Insurance, vol. 1, p. 783. It is my conclusion that the bankrupt's policies come within the provisions of section 55-a of the New York Insurance Law.

The courts of New York state have not passed upon the specific question presented. A number of cases in those courts have been cited in the briefs submitted. Among such are these: Chatham Phenix Nat. Bank v. Crosney, 251 N. Y. 190, 167 N. E. 217; U. S. Mortgage & Trust Co. v. Ruggles, 258 N. Y. 38, 179 N. E. 250, 79 A. L. R. 802; Amberg v. Manhattan Life Ins. Co., 171 N. Y. 314, 63 N. E. 1111; Baron v. Brummer, supra; Miller v. Campbell, supra; Maurice v. Travelers' Insurance Co., 121 Misc. 427, 201 N. Y. S. 369. None are directly in point, and, with a single exception, relate to policies issued prior to March 31, 1927.

Section 55-a in its language is derived, in substance, from the Massachusetts and Pennsylvania statutes. Other states, notably New Jersey and Ohio, have similar statutes. The New York statutes and these other state statutes have been construed by federal courts.

In re Messinger (C. C. A.) 29 F.(2d) 158, 160, 68 A. L. R. 1205, is decisive of the question here. There, two insurance policies were payable to insured's wife as the beneficiary. The insured reserved the right to change the beneficiary. The referee and District Court directed the return of the policies to the bankrupt. The Circuit Court modified the District Court decision to the extent that it held that the trustee was entitled to the cash surrender value of the policies to the extent of the proved claims existing March 31, 1927, and further that the cash surrender value of the policies be held as unadministered assets in case the beneficiary were changed for the benefit of bankrupt. Bankruptcy followed soon after March 31, 1927. The conclusion must be drawn from the language of the opinion that upon change of the beneficiary the cash surrender value of the policies as of the date of the adjudication (after deducting any amounts paid to creditors whose claims existed prior to March 31, 1927), is applicable to the payment of claims arising after March 31, 1927. The court points out that "the statute does not exempt the bankrupt if he exercises his reserved power to change the beneficiary for his personal advantage." It points attention to the language of the section which provides that the lawful beneficiary "'other than the insured' shall be entitled to the proceeds and avails" against the creditors and representatives of the insured.

It is further said that the policy coming under section 55-a does not protect the insured against his creditors. Presumably an "old line life insurance policy" was involved. If such is the law in relation to the ordinary life insurance policy, it assuredly must be the law where the beneficiary, as here, has an interest dependent upon two contingencies rather than one, and where the insured reserves to himself the endowment in case he survives a fixed period. In the Messinger Case, the court cites In re Weick (C. C. A.) 2 F.(2d) 647, and Ralph v. Cox (C. C. A.) 1 F. (2d) 435, which passed on exemption statutes in Ohio and Minnesota respectively.

Courts are inclined to construe liberally statutory exemption provisions relative to insurance moneys. The able and exhaustive briefs of counsel contain citations of many decisions relative to such provisions. Obviously such opinions are based upon the particular language of the exemption provision of the statute, and my attention has been called to no statute which is identical with the New York statute. The Massachusetts statute, chapter 175, § 125, General Laws of Massachusetts 1921, and the Insurance Act of New Jersey (1902), § 38 (2 Comp. St. 1910, p. 2850, § 38), each contains a clause to the effect that the beneficiary other than the insured shall be entitled to the proceeds of the policy as against creditors of insured. The Massachusetts statute has been construed in Bailey v. Wood, 202 Mass. 549, 89 N. E. 147, 25 L. R. A. (N. S.) 722, In re Loveland (D. C. Mass. 1912) 192 F. 1005, Id. (C. C. A.) 200 F. 136, In re Simmons (D. C. Mass. 1918) 253 F. 466, and other cases. I do not find that any of these pass upon the specific question presented here. Bailey v. Wood, supra, involved the question of the effect of an assignment of a paid-up endowment policy. It was held that the assignment was good, but that the assignee was accountable for premiums paid. In re Loveland involved the question of an order directing the surrender of the policy of insurance. Smith v. Metropolitan Life Insurance Co. (C. C. A. 3rd) 43 F.(2d) 74, affirming In re Pinals (D. C.) 38 F.(2d) 117, apparently is in conflict with In re Messinger. Differences may be reconciled by the fact that the New Jersey statute contains an additional section (section 39 [2 Comp. St. 1910, p. 2850, § 39]) providing that every policy shall inure to the separate benefit of the beneficiary. In the District Court in Smith v. Metropolitan Life Insurance Co. (In re Pinals), supra, citation is made of reported cases in seven-

teen different states as supporting the decision in that case. Included among those is In re Messinger, supra. Examination of these cases shows much diversity in the statutes construed. Brown v. Home Life Insurance Co. (D. C. E. D. Okl.) 3 F.(2d) 661; In re Hammells (D. C. Ariz.) 5 F.(2d) 879 (Arizona Stat.); In re Lang, 20 F.(2d) 236 (D. C. Pa.); In re Bendall, 28 F.(2d) 999 (D. C. Mich.); Hickman v. Hanover, 33 F.(2d) 873 (C. C. A. Md.), are typical cases on the question of the exemption of cash surrender value of policies of life insurance under differing statutes.

Since this court should follow the decision in the Messinger Case, it would seem that this opinion has been unduly extended. An excuse for the length may be found in the fact that the study of the question of the exemption provisions of life insurance policies has involved the examination of many cases cited upon the briefs and others.

■ Following the law as laid down in the Messinger Case, the report of the referee is modified to the extent that, upon change of beneficiary for the personal advantage of the insured or at the expiration of the maturity term of the policies during the lifetime of the insured, the amount of the cash surrender value of each policy as of the date of the adjudication herein shall be and become unadministered assets of the bankrupt's estate. Possession of policies is given bankrupt.