**In re FOGEL.**

**FOGEL v. BANGS.**

No. 9300.

Circuit Court of Appeals, Seventh Circuit.

Nov. 7, 1947.

Rehearing Denied Dec. 3, 1947.

LINDLEY, District Judge, dissenting.

Clyde Reed and James P. Murphy, both of Fort Wayne, Ind., for appellant.

U. S. Lesh, of Huntington, Ind., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order of the District Court, entered December 9, 1946, overruling the bankrupt's petition for review of a Referee's order theretofore entered on October 12, 1946. The latter directed the bankrupt to turn over to the trustee two life insurance policies or the proceeds thereof asserted by the bankrupt to be exempt from the provisions of the Bankruptcy Act.

Appellant filed his voluntary petition in bankruptcy in the District Court for the Northern District of Indiana on December 7, 1944, without listing the insurance policies or the proceeds thereof now in dispute. Both policies were issued by the Metropolitan Life Insurance Company of New York in the amount of $1,000, and each was a 13-year endowment policy, one to mature on February 6, 1945 and the other February 6, 1947. By stipulation, only one of the policies appears in the record, but they may be treated identically in so far as any legal question raised on this appeal is concerned. We shall, therefore, refer only to the policy contained in the record, and whatever is said concerning it is equally applicable to the other policy. The policy states that the Metropolitan Life Insurance Company "Hereby Insures the Life of Morris Fogel, herein called the Insured, being the Father of the Child named herein," and promises to pay "One Thousand Dollars (Herein called the maturity amount) upon the surrender of this Policy, to the Insured if the Insured and Sam Fogel Son (Herein called the Child) be living on the 6th day of February 1947 (herein called the Maturity Date)." The policy provides that if the insured die during the lifetime of the child and prior to February 6, 1947 (the maturity date), the insurer will issue a supplementary contract containing certain provisions, among others that the child if living on the maturity date will be paid the face value of the policy, but that if the child die prior to such maturity date the insurer will pay to the estate of such child a sum which, with compound interest at $3\frac{1}{2}\%$ per annum, would amount, at the maturity date, to the maturity amount. The policy also provides that if the child die during the lifetime of the insured and prior to the maturity date, the company shall be liable only to return to the insured the amount received by it as premiums, together with certain interest thereon.

The policy is designated as a "Child's Educational Fund, 13 Year Endowment Policy," and in the application made by Morris Fogel, in response to the question, "Name of Child for whom Educational Fund is intended," it is stated, "Sam Fogel." In response to the question, "Child's Age Next Birthday," it is stated, "8 Years." The policy was assignable only in the manner prescribed by the insurer and it contains no provision authorizing the insured to change the beneficiary. The policy provides for a cash or loan value alleged by the trustee in his petition for turnover as being the amount of $393 on the policy which matured February 6, 1947. The other policy which expired February 6, 1945 was shortly thereafter surrendered by the bankrupt, upon which he realized the face value thereof.

The primary contested issue is whether these policies are exempt to the bankrupt under the provisions of the Bankruptcy Act of whether they passed to the trustee as a part of his estate. Another issue raised by the trustee is that the appeal was not timely taken and should be dismissed for that reason. The bankrupt, so we think, unduly labors the point that under Title 11 U.S.C.A. § 24 of the Bankruptcy Act, the bankrupt's exemption is to be determined by the law of the State of his domicile. This proposition is so conclusively settled that it need not be discussed; in fact, it is so conceded by the trustee.

The primary issue, therefore, requires a construction of the Indiana statute, the pertinent section of which provides: "All

policies of life insurance upon the life of any person, which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children, or any relative dependent upon such persons, or any creditor, shall be held, subject to change of beneficiary from time to time, if desired, for the benefit of such wife or children, or other relative, or creditor, free and clear from all claims of the creditors of such insured person; and the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt or debts of such insured person." Section 39-4210, Burns Indiana Statutes Annotated, 1933.

Both sides agree that there is no decision of an Indiana court construing this provision as it relates to a situation as is here presented. In the absence of such a decision, we are faced with the necessity of placing our own interpretation upon it, with such aid as we may get from other courts which have treated of similar provisions as applied to analogous situations.

█ In construing an exemption provision, it is pertinent to keep in mind the well established rule that such a provision should be interpreted liberally in favor of those for whose benefit it is enacted. Holden v. Stratton, 198 U.S. 202, 210, 25 S.Ct. 656, 49 L.Ed. 1018; In Re Weick, 6 Cir., 2 F.2d 647; Turner v. Bovee, 9 Cir., 92 F.2d 791, 793.

A construction of this provision favorable to the bankrupt is required if an affirmative answer be made to two questions: (1) Were the policies in controversy "policies of life insurance upon the life of any person?" and (2) Were they "taken out for the benefit of" a child? If these two questions be answered in the affirmative, it is obvious that the policies or the proceeds thereof are exempt under the concluding phrase of the provision, which states, "the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt or debts of such insured person."

█ We think it cannot be seriously disputed but that the policies in controversy are life insurance policies within the meaning of the statutory provision. We are not here concerned with an annuity contract or a strictly endowment policy but with a contract which is dependent not only upon the life of the insured but also upon the life of the son. True, the contracts partake of the nature of an endowment or incorporate an endowment feature. It seems more reasonable, however, to conclude that this endowment feature is incidental to a life insurance contract rather than that the latter is incidental to the endowment feature. The view that these contracts are policies of life insurance finds support in the authorities. Holden v. Stratton, supra; Moskowitz v. Davis, 6 Cir., 68 F.2d 818.

█ The answer to the question as to whether these policies were "for the benefit of" a child, within the meaning of the statutory provision, raises a more serious problem. It is to be noted that the statute does not require that a policy be for the sole benefit of a child and neither does it exclude a policy which is for the benefit of the insured. Obviously, the policies in question were for the benefit of the bankrupt, but it seems equally obvious that they were also for the benefit of his sons. Certainly it is plain that the policies created an interest both for the father and the sons. The trustee makes much of the contention that the insured was the primary beneficiary and that at most the sons were only contingent beneficiaries. Even so, this does not negative the idea that the policies were for the benefit of the latter. While we do not think it necessary to appraise the relative benefit which was conferred upon the father and the sons, we are of the view that the benefit conferred upon the sons was as substantial as that conferred upon the father. As already shown, the right of the father to collect the maturity value of the policies was not only contingent upon his living until the maturity date but it was also contingent upon his sons' living until that date. If the latter, previous to that date, died before their father, he was entitled only to a return of premiums; but if the father died before that date, the sons, if living on that date, were entitled to the maturity amount or to certain other optional benefits. The father could only assign the policies in the manner prescribed by the insurer, and the policies contained no authority for a change of beneficiary.

It is our view that the Indiana statute, when liberally construed in favor of the bankrupt as it should be, covered the policies in controversy as well as the proceeds thereof, and that they did not become a part of the bankruptcy estate. Our study of the numerous cases cited and relied upon by the respective parties, as well as other cases, strengthens this view. A discussion of all these cases would serve no useful purpose, but we shall refer to some of them.

In Holden v. Stratton, supra, the court decided that two policies of insurance were exempt under a statutory exemption provision of the State of Washington. One of the policies involved was for $5,000, and was termed the semitontine plan. An annual premium was required to be paid for ten years, and at that time the insured, if living, or his administrators or assigns could upon surrender of the policy receive its full face value. The insured's wife was named as beneficiary with the right to collect the proceeds if the insured died prior to the date of maturity, and in the event she died first the proceeds were paid to the estate or assigns of the insured. Both the insured and the beneficiary were declared bankrupts and the court held that the policy was exempt as to each of them. This holding was predicated upon a State provision which provided [198 U.S. 202, 25 S.Ct. 657] "that the proceeds or avails of all life insurance shall be exempt from all liability for any debt." It will be noted that this exemption phraseology is almost identical with the Indiana provision.

The trustee's effort to distinguish the Stratton case is not convincing. It is pointed out that in that case the primary beneficiary was insured's wife, while in the instant case the primary beneficiary was the insured. This is a distinction without a difference. In both cases the insured had a right to collect the face amount of the policy if living at the day of maturity, and the wife in the Stratton case and the child in the instant case were entitled to collect only in case the insured died prior to the date of maturity. In fact, the right which the wife had in the Stratton case is almost identical with that which the son had in the instant case.

The trustee also relies upon In re Herr, 182 F. 716, and In re Loveland, 192 F. 1005, 1007, both District Court opinions, to distinguish the Stratton case. Aside from the dubious propriety of attempting to distinguish a decision of the Supreme Court by what is stated in these District Court cases, we think that neither of them is in conflict. In the Herr case the court emphasized that the insured was authorized by the terms of the policy to change the beneficiary at will. In the Loveland case the exemption provision under consideration was different from that of the instant case in that it required that the insurance be effected "in favor of a person other than himself," while the Indiana provision requires only that it be taken out for the benefit of a certain class, including a child.

The State of Ohio has the identical exemption provision as that of the State of Indiana. Two cases construing such provision are called to our attention. In re Weick, supra, and Moskowitz v. Davis, supra. The bankrupt relies upon the former case and the trustee upon the latter as sustaining their respective positions. There is support in the Weick case for the bankrupt's contention here but we think there is no support in the Moskowitz case for the trustee's position. Neither do we think the two decisions are in conflict. As the court said in the Moskowitz case (page 819 of 68 F.2d) : "The Weick Case dealt with two life insurance policies with incidental endowment features rather than with a simple investment or pure endowment contract." The court denied the exemption in the Moskowitz case upon the basic ground that the policies in suit were not life insurance policies but were pure endowment policies.

In Turner v. Bovee, supra [92 F.2d 793], the court went further than we need to go in the instant case in holding that a policy of insurance was exempt under an exemption statute of the State of Washington (evidently changed subsequent to the decision in Holden v. Stratton, supra). The statute provided: "That the proceeds or avails of life insurance heretofore or hereafter effected by any person on his own life * * * in favor of a person other than himself * * * shall be exempt

from all liability for any debt of the person effecting the insurance * * *." We think this is a more limited provision than that of Indiana because the insurance must be "in favor of a person other than himself." The court considered the following factual situation: The insurance was payable to the insured twenty years after the issuance of the policy, providing the insured be living at that time, but payable to his wife as beneficiary if the insured's death occurred prior to the expiration of the twenty-year period. The policy had a substantial cash value at the time of the insured's adjudication in bankruptcy. Many of the same arguments were advanced by the trustee as are advanced here. To state the matter briefly, the court, in response to such arguments, held that the policy was one of insurance notwithstanding that it contained endowment provisions, and that a liberal construction of the statutory provision required a holding in favor of exemption, notwithstanding the language "in favor of a person other than himself." As to the latter language, the court stated (page 793 of 92 F.2d): "It is true the endowment provisions of the policy are in favor of the insured, but its life insurance provisions—provisions relating to death benefits—are in favor of a person other than himself, namely, his wife, who was at the time of adjudication, and is now, the beneficiary under the policy. That its endowment provisions are in favor of the insured does not, in our opinion, defeat the exemption."

We therefore think that the weight of authority in analogous situations sustains our view that under the Indiana statute the policies in controversy or the proceeds thereof were exempt. We have also considered the trustee's contention that the appeal should be dismissed because it was not perfected in apt time and find it without merit.

The order appealed from is therefore reversed and remanded, with directions that it be vacated and an order entered in conformity with the views herein expressed.

LINDLEY, District Judge (dissenting).

I think it well to remember the provisions of each policy. Each provides that the company "insures the life of" the insured and "promises to pay" him $1,000 on maturity date, if the insured and his son are then living. Each further provides that if the child dies during the lifetime of the insured, upon surrender of the policy, the company will pay to the insured the total amount of premiums paid plus compound interest until the death of the child. If the insured dies before the date of maturity and the child survives, it is entitled, if it lives to the maturity date, to the maturity amount. If it dies before the maturity date, its executors will receive the present cash value of the maturity value at the time of the child's death computed according to an expressed formula. The insured, after paying premiums for three years, has the right to receive the surrender value named in the policy or to convert the policy into an adjusted amount as participating paid-up endowment insurance payable to the insured at the maturity date. Should the insured die prior to the maturity date, the child, if living, has the same right and, if not living, his executors, to participating paid-up endowment insurance. It should be observed further that the insured could assign the policies. They expressly speak of assignment and provide merely that any assignment must be made on blanks prepared by the company. Obviously, this was stipulated because the insurer desired uniform assignments.

The two questions involved in this proceeding are, as stated by the majority, (1) Were the contracts life insurance policies within the meaning of the Indiana exemption statute; (2) Were they taken out for the benefit of the insured's child?

I pass the dubious first question and proceed to the second. The majority reasons that the policies were for the benefit of the child because, though the insured stood to recover all sums due if he lived, the benefit conferred upon the son was as substantial as that conferred upon the father. I think the opinion fails to give proper significance to the cash surrender value, loan value, and the provision for paid-up endowment insurance, all valuable rights belonging to the insured alone, if he lives. The following cases may be of some value in considering this question.

In Re Rose, D.C., 24 F.2d 253, the court said: "I am of the opinion that the policies referred to in the Pennsylvania exemption statutes are policies in which the wife or children or dependent relative of the insured has been made the beneficiary and remains such. In other words, the phrase 'made for the benefit of * * * the wife' is equivalent to 'in which the wife is the beneficiary.'" In In Re Kenin's Trust Estate, 343 Pa. 549, 23 A.2d 837, 841, the court said: "* * * the purpose (of the statute exempting from claims of insured's creditors proceeds of policies made for the benefit of or assigned to the wife or children or dependent relatives of the insured) is to exempt the proceeds of life insurance policies made for the benefit of certain designated persons and not payable to the estate of the insured."

In re Loveland, D.C., 192 F. 1005, 1008, where the statute exempted the proceeds of policies made payable to or for the benefit of a married woman, the court held that a policy payable to the insured at the end of 20 years if living, and in case of his prior death to his wife if living, otherwise to his legal representatives or assigns, was not exempt, but, on the bankruptcy of the insured, passed to his trustee. The court said: "The mere fact that a policy contains a provision making it payable to a married woman, however that provision may be limited or to whatever conditions it may be subjected, I am unable to regard as all that the statute requires for the purpose of exempting the policy. The statute is obviously intended to secure the result of preserving the benefit of the policy to her (the wife) or her children, independently of the insured or his representatives. If the provision for payment to her is not adapted to secure this result, it can hardly be such a provision as the statute contemplates. If the insured has retained rights in the policy at the time of his bankruptcy available to him or his representatives, these are rights which he could have transferred, and therefore rights passing to his trustee in bankruptcy, under section 70a (5) [11 U.S.C. A. § 110, sub. a(5)]. In Blinn v. Dame, 207 Mass. 159, 93 N.E. 601 [20 Ann.Cas. 1184], the Massachusetts Supreme Court held that the insured under a 20-year endowment policy, payable to him at the expiration of that period, or if he should die before its expiration, then to his children if they survived him, and which reserved to him the right to surrender the policy to the company at any time or to assign it, had rights under the policy which would pass under a general assignment by him of all his property, notwithstanding the provisions of the Massachusetts statutes which have been quoted, entitling the lawful beneficiary to the proceeds of a policy in favor of a person other than the insured himself."

It seems to me that neither policy can properly be said to be for the benefit of the son. Many contingencies lie in the latter's path before he can become entitled to the face value of the policy; the insured must die before the maturity date, without having surrendered the policy or taken advantage of the provisions for a paid-up policy or assigned it or taken the cash surrender value; he, the child, must live until the maturity date of the policy. I approve the language of the Loveland case: "The statute is obviously intended to secure the result of preserving the benefit of the policy to her (the wife) or her children, independently of the insured or his representatives. If the provision for payment to her is not adapted to secure this result, it can hardly be such a provision as the statute contemplates." The policy in question does not seem reasonably adapted to give anything to the child; in all probability he will receive no direct benefit. Surely the legislature must have intended to exempt only those directly benefited.

I would affirm the judgment.